CABINET FOR HEALTH AND FAMILY SERVICES; and Janie Miller in her official capacity as secretary of the Cabinet for Health and Family Services, Appellants

v.

The COURIER-JOURNAL, INC.; and Lexington H–L Services, Inc., d/b/a The Lexington Herald-Leader; and Patrick Watkins, Appellees
and
The Courier-Journal, Inc., Cross-Appellant

v.

Cabinet for Health and Family Services; and Janie Miller in her official capacity as Secretary of the Cabinet for Health and Family Services; and Patrick Watkins, Cross-Appellees
and
Cabinet for Health and Family Services; and Audrey Tayse Haynes in her official capacity as Secretary of the Cabinet for Health and Family Services, Appellants

v.

The Courier-Journal, Inc.; and Lexington H–L Services, Inc., d/b/a the Lexington Herald-Leader, Appellees.

NO. 2012–CA–000179–MR
NO. 2012–CA–000356–MR
NO. 2014–CA–000540–MR

Court of Appeals of Kentucky.

RENDERED: FEBRUARY 19, 2016; 10:00 A.M.

BRIEFS FOR APPELLANTS/CROSS-APPELLEES, CABINET FOR HEALTH AND FAMILY SERVICES: Sheryl G. Snyder, Louisville, Kentucky, D. Brent Irvin, Mona Womack, Frankfort, Kentucky

ORAL ARGUMENT FOR APPELLANTS/CROSS-APPELLEES, CABINET FOR HEALTH AND FAMILY SERVICES: Sheryl G. Snyder, Louisville, Kentucky

BRIEFS FOR APPELLEE/CROSS-APPELLANT, THE COURIER-JOURNAL, INC.: Jon L. Fleischaker, Michael P. Abate, Louisville, Kentucky

ORAL ARGUMENT FOR APPELLEE/CROSS-APPELLANT, THE COURIER-JOURNAL, INC.: Jon L. Fleischaker, Louisville, Kentucky

BRIEF FOR APPELLEE, LEXINGTON H–L SERVICES, INC.: Robert F. Houlihan, Jr., Kif H. Skidmore, Lexington, Kentucky

ORAL ARGUMENT FOR APPELLEE, LEXINGTON H–L SERVICES, INC.: Kif H. Skidmore, Lexington, Kentucky

AMICUS CURIAE BRIEF OF THE NATIONAL COUNCIL OF JEWISH WOMEN: Amelia Franklin Adams, Louisville, Kentucky

BEFORE: MAZE, STUMBO, AND TAYLOR, JUDGES.

*OPINION*

MAZE, JUDGE:

Kentucky's Cabinet for Health and Family Services (hereinafter "the Cabinet"), and Janie Miller in her official capacity as Secretary of the Cabinet bring Appeal Nos.2012-CA-000179-MR and 2014-CA-000540-MR from the Franklin Circuit Court's January 19, 2012 and March 18, 2014 judgments, respectively. In addition, the Courier–Journal, Inc. (hereinafter "the Courier–Journal") brings Cross–Appeal No.2012-CA-000356-MR from the January 19, 2012 judgment. We affirm the trial court's rulings in all three cases and remand for that court's consideration of post-judgment fees and costs.

**Background**

These appeals emanate from an action filed in Franklin Circuit Court under the Open Records Act[1] by the Courier–Journal and Lexington H-L Services, Inc., d/b/a the Lexington Herald–Leader ("Herald–Leader") following the Cabinet's denial of open records requests for access to certain records possessed by the Cabinet regarding child fatalities or near fatalities. On December 17, 2010, the Courier–Journal made an open records request and sought access to "[a]ll internal reviews conducted by the Cabinet of Health and Family Services of child fatalities and near fatalities since Jan. 1, 2009," and "fatality reviews" of [R.R. Jr.], who died July 30, 2008, and [C.A.], who died August 28, 2008.[2] By letter dated January 21, 2011, the Cabinet denied the request in part and granted the request in part. The Cabinet granted the request by providing a report

it prepared pursuant to Kentucky Revised Statutes (KRS) 620.050(12)(b) entitled "Summary of Recommendations from Internal Reviews of Child Fatality/Near Fatality Cases with DCBS [Department for Community Based Services] History SFY [State Fiscal Year] 2008 and 2009" (Summary of Recommendations). The Cabinet also provided the "Annual Report Child Abuse" for 2009 and 2010. The Cabinet noted that the Summary of Recommendations for 2010 had not yet been prepared. The Cabinet declined to release any other records or documents concerning child fatalities or near fatalities citing to the statutory confidential nature of the information and the personal privacy exemption of the Open Records Act.

On January 4, 2011, the Herald–Leader made an open records request and sought access to the "complete files maintained by the Cabinet or any of its agencies on any person under the age of 18 who died while under the supervision, control or monitoring of the Cabinet during [S]tate Fiscal Year 2010, covering the period July 1, 2009[,] to June 30, 2010...."[3] By letter dated January 7, 2011, the Cabinet denied the Herald–Leader's request. The Cabinet stated that the request was unreasonably burdensome as it required the Cabinet to "conduct research to ascertain exactly what files you wish to receive." However, the Cabinet advised that it might entertain a request limited to a criteria of "children whose deaths were the result of abuse or neglect...."

Thereafter, on January 17, 2011, the Herald–Leader made another open rec-

1. The Open Records Act is codified in Kentucky Revised Statutes (KRS) 61.870, *et seq.*

2. Deborah Yetter, a reporter for the Courier–Journal, Inc., (Courier–Journal) actually made the open records request.

3. Bill Estep, an employee of the Herald–Leader Services, Inc., d/b/a the Lexington Herald–Leader (Herald–Leader), actually made the open records request.

ords request and particularly sought access to:

— All records pertaining to the case of any child [where] child abuse or neglect has resulted in a child fatality or near fatality since January 1, 2009. This is intended to require you to produce all records related to any such case as were produced under the May 3, 2010[,] order by Judge Phillip Shepherd related to the case of [K.B.D.] and his mother.

— Any internal review, as required by KRS 620.050(12)(a), related to any case where child abuse or neglect has resulted in a child fatality or near fatality since January 1, 2009.

— Any fatality report of any case where child abuse or neglect has resulted in a child fatality or near fatality since January 1, 2009.

— With respect to the cases of [M.W.], who died in March 2007, and [K.S.] who died in December 2008:

a. All records pertaining to the cases of [M.W.] and [K.S.]. This is intended to require you to produce all records related to any such case as were produced under the May 3, 2010[,] Order by Judge Shepherd related to the case of [K.B.D.] and his mother.

b. Any internal review, as required by KRS 620.050(12)(a), related to the cases of—[M.W.] and [K.S.].

c. Any fatality report with regard to the deaths of [M.W.] and [K.S.].

By letter dated January 21, 2011, the Cabinet denied the Herald–Leader's request in part and granted the request in part. In support of this denial, the Cabinet cited "emergency" amendments to its regulations regarding disclosure of child abuse and neglect records. The Cabinet promulgated these regulations in the two weeks which elapsed between the Herald–Leader's initial request and the Cabinet's final denial. The Cabinet instead produced a preliminary report prepared by the Cabinet pursuant to KRS 620.050(12)(b) and entitled "Summary of Recommendations from Internal Reviews of Child Fatality/Near Fatality Cases with DCBS History SFY 2008 and 2009" (Summary of Recommendations). The Cabinet noted that the Summary of Recommendations for 2010 had not yet been prepared. The Cabinet refused to release any other records or documents concerning child fatality or near fatality cases citing the sensitive nature of the information and the personal privacy exemption of the Open Records Act.

On January 27, 2011, the Courier–Journal and the Herald–Leader filed a complaint against the Cabinet in the Franklin Circuit Court under KRS 61.882.[4] The Courier–Journal and the Herald–Leader claimed that the Cabinet violated the Open Records Act by denying their open records requests for access to records pertaining to child fatalities/near fatalities caused by abuse or neglect from January 1, 2009, to December 17, 2010, and for access to records pertaining to specific child fatalities occurring in 2007 and 2008.[5] Both the Courier–Journal and the Herald–Leader sought attorneys' fees, costs, and statutory penalties pursuant to KRS 61.882(5) against the Cabinet.

---

4. Pursuant to its election under KRS 61.882, the Courier–Journal and the Herald–Leader filed an original action in circuit court rather than seeking review by the Kentucky Attorney General.

5. The Courier–Journal sought records pertaining to the deaths of two specific children, R.R. and C.A. The Herald–Leader also sought records pertaining to the deaths of two specific children, M.W. and K.S.

The Courier–Journal and the Herald–Leader filed a motion for summary judgment arguing that the Cabinet wrongfully withheld the requested records and that the records were subject to disclosure under the Open Records Act. The Cabinet argued that the records were confidential pursuant to various statutory provisions and were not open to inspection. The Cabinet also maintained that the records were exempt from disclosure under the personal privacy, ongoing criminal proceeding, and other exemptions found in the Open Records Act—specifically, KRS 61.878.

By orders and judgments entered November 3, 2011, December 21, 2011, and January 19, 2012, the circuit court determined that the Cabinet improperly denied the Courier–Journal's and the Herald–Leader's open records requests, and it ordered the Cabinet to produce the requested records subject only to the following redactions: [6]

1. In the case of *near* fatality, the name of the child victim may be redacted.

2. In the case of a fatality or a near fatality:

a. The name of private citizen who reports the child abuse or neglect may be redacted, unless the informant is a family member. No redactions shall be made when the informant is law enforcement personnel, school personnel, medical personnel, or social service personnel;

b. The names of minor siblings, who are mentioned only because of their sibling relationship with a victim, may be redacted. In the individual case files, however, the siblings should be identified by "Sibling # 1," "Sibling # 2," etc; and

c. The name of a minor perpetrator may be redacted.

The circuit court also noted that the Cabinet could seek to make additional redactions to an individual record by specifically invoking an exemption under the Open Records Act and by arguing with specificity its application to such record.

The court's order required the immediate release of child fatality/near fatality internal reviews but gave the Cabinet additional time to produce the 140 actual case files.[7] Specifically, the court ordered the Cabinet to produce the 140 case files at a rate of 1,000 pages per week with a detailed privilege log of any redacted material supported by a specific exemption under the Open Records Act. Additionally, the court found that the Cabinet willfully denied the open records requests of the Courier–Journal and the Herald–Leader. Thus, the court awarded the Courier–Journal $44,002.40 in attorneys' fees and costs, the Herald–Leader $3,438 in attorneys' fees and costs, and it imposed $9,925 in statutory penalties against the Cabinet per KRS 61.882(5).

The Cabinet then filed Appeal No.2012–CA–000179–MR, and the Courier–Journal filed Cross–Appeal No.2012–CA–000356–MR from the above orders and judgment.[8]

---

6. The trial court's January 19, 2012 order contained its instructions pertaining to redactions.

7. The Cabinet for Health and Family Services (Cabinet) originally informed the circuit court that there existed some 180 case files concerning child fatality/near fatality cases as requested by the Courier–Journal and the

Herald–Leader, but the Cabinet later clarified that it only possessed 140 case files. We will refer to 140 as the number of case files.

8. The appeal and cross-appeal were held in abeyance per joint motion of the parties on August 22, 2013, and were returned to the active docket by order of this Court entered September 17, 2014.

The Cabinet also filed motions seeking interlocutory relief under Kentucky Rules of Civil Procedure (CR) 65.07 and CR 65.08. Therein, the Cabinet sought to stay enforcement of the circuit court's injunction requiring production of the records; however, this Court denied both motions.[9]

On February 23, 2012, the circuit court ordered the Cabinet to fully produce the 140 case files concerning child fatality or near fatality within ninety days with a detailed privilege log of any material redacted under a specific exemption of the Open Records Act. The Cabinet eventually produced some records but with many redactions. Consequently, the circuit court then directed the Cabinet to:

· [P]romptly make the documents and files requested by Plaintiffs available. Each and every redaction in the record must be noted on a log accompanying the file, and **must include a statement of the specific Open Records Act exemption authorizing the withholding of the record, and a brief explanation of how the exemption applies to the record withheld.**

(Emphasis in original). Within thirty days of this May 10, 2013 order, the Cabinet produced the 140 case files with a redaction log citing to specific exemptions under the Open Records Act.

By Order entered June 14, 2013, the circuit court observed that "[t]he overwhelming majority of the redactions claimed by the Cabinet raise a claim of privacy interests as the basis to withhold information under KRS 61.878(1)(a)." The circuit court stated that application of the personal privacy exemption involves a case-by-case analysis. The court then determined that the parties should "jointly designate up to 20 of the 140 files" to be particularly addressed at an evidentiary hearing.

Following the evidentiary hearing, the court rendered an opinion and order on December 23, 2013. Therein, the court held that none of the exemptions provided under the Open Records Act applied to the Cabinet's redactions. The court concluded that the Cabinet's redactions were too broad to fit within the personal privacy exemption. The court also determined that the Cabinet improperly redacted information based upon the law enforcement exemption (KRS 61.878(1)(h)), family and juvenile court record exemption (KRS 61.878(1)($l$)), and Health Insurance Portability and Accountability Act (KRS 61.878(1)(k)). The court viewed the Cabinet's redactions as both directly and implicitly violative of the Open Records Act. The court ordered the Cabinet to produce the 140 case files of the child fatalities or near fatalities with minimal redactions pursuant to its January 19, 2012 opinion. The court also found that the Cabinet had "willfully" withheld the records in violation of the Open Records Act, thus entitling the Courier–Journal and Herald–Leader to attorneys' fees, costs, and statutory penalties. Based upon the latter finding, the court imposed $756,000 in statutory penalties against the Cabinet and directed the Courier–Journal and Herald–Leader to file affidavits concerning their respective attorneys' fees and costs.

By final judgment entered March 18, 2014, the circuit court ordered the Cabinet to pay the Herald–Leader attorneys' fees and costs of $72,896.50 and the Courier–Journal $228,887.06 in attorneys' fees and costs. On March 31, 2014, the Cabinet filed a notice of appeal (Appeal No.2014–

9. The Kentucky Rules of Civil Procedure (CR) 65.07 (Appeal No.2012–CA–000902–I) and CR 65.08 motions were denied by order entered July 9, 2012.

CA–000540–MR) from the March 18, 2014, final judgment. These appeals follow.[10]

## Analysis

### I. Disclosure of the Records under the Open Records Act

In Appeal Nos.2012–CA–000179–MR and 2014–CA–000540–MR, the Cabinet contends that the circuit court improperly ordered production and limited redaction of records concerning child fatalities or near fatalities caused by abuse or neglect. These records included internal reviews and 140 case files possessed by the Cabinet. The Cabinet argues that the circuit court's orders improperly failed to apply various exemptions under the Open Records Act, including the personal privacy exemption of KRS 61.878(1)(a), and violated numerous statutory confidentiality provisions. In its cross-appeal, case No.2012–CA–000356–MR, the Courier–Journal agrees with the circuit court's ordered production of records but disagrees with the court's reasoning, instead arguing that *res judicata* compelled production of the records.[11]

After filing the notices in the above-styled appeals, the Cabinet produced the records requested by the Courier–Journal and the Herald–Leader with only the limit-

ed redactions ordered by the circuit court. This fact is uncontroverted. Both the Courier–Journal and Herald–Leader argue that these appeals were mooted by the Cabinet's production of the records in accordance with the circuit court's orders.

### A. The Mootness Doctrine

■ It has been long established that judicial power may constitutionally extend to only justiciable controversies. *See, e.g., Ky. Bd. of Nursing v. Sullivan Univ. Sys., Inc.,* 433 S.W.3d 341, 344 (Ky.2014), citing *Hughes v. Welch,* 664 S.W.2d 205 (Ky.App. 1984), and Kentucky Constitution § 110. Therefore, an appellate court is generally without jurisdiction to reach the merits where no "present, ongoing controversy" or case in controversy exists as the court is unable to grant meaningful relief to either party. *Dep't. of Corr. v. Engle,* 302 S.W.3d 60, 63 (Ky.2010) (citations omitted); *Med. Vision Group, P.S.C. v. Philpot,* 261 S.W.3d 485 (Ky.2008).

■ Although no published Kentucky precedent exists upon this precise issue, numerous federal and state courts have recognized that once a party produces the records sought pursuant to a request under an open records statutory enactment, the controversy surrounding the records is rendered moot.[12] *Walsh v. United States*

---

10. On March 31, 2014, the Cabinet filed a motion to transfer these appeals from the Court of Appeals to the Supreme Court. CR 74.02. By order (2014–SC–000165–I) entered April 17, 2014, the Supreme Court denied the motion to transfer. Upon joint motion of the parties, this appeal was held in abeyance on August 6, 2014, and returned to the active docket of this Court by order entered September 17, 2014.

11. If the appeals are not moot, the Courier–Journal argues that a previous circuit court case (*Herald–Leader and the Courier–Journal v. Cabinet for Health and Family Services,* 09–CI–01742) operates to bar adjudicating the issues presented herein as to disclosure of the records under the Open Records Act.

12. While not bound by unpublished opinions, the Kentucky Court of Appeals has previously rendered two unpublished opinions (*City of Owensboro v. Mayse,* No.2012–CA–001829–MR, 2013 WL 4711168 (2013 WL 4711168)(Aug. 30, 2013); and *WLEX Communications, LLC v. Lexington–Fayette Urban County Government,* No.2005–CA–002453–MR) (2007 WL 1300976)(May 4, 2007)), holding that where records are produced under the open records act the appeal is rendered moot. We view these opinions as containing sound legal reasoning upon the issue of mootness in relation to the Open Records Act.

*Dept. of Veterans Affairs,* 400 F.3d 535 (7th Cir.2005); *Anderson v. United States Dept. of Health & Human Servs.,* 3 F.3d 1383 (10th Cir.1993); *Chilivis v. Sec. and Exch. Comm'n,* 673 F.2d 1205 (11th Cir. 1982); *Fraternal Order of Police, Metro. Labor Comm. v. Dist. of Columbia,* 82 A.3d 803 (D.C.2014); *Duncan Pub., Inc. v. City of Chicago,* 304 Ill.App.3d 778, 709 N.E.2d 1281, 237 Ill.Dec. 568 (1999); *Clapper v. Oregon State Police,* 228 Or.App. 172, 206 P.3d 1135 (2009); *Sloan v. South Carolina Dept. of Revenue,* 409 S.C. 551, 762 S.E.2d 687 (2014); *Murray City v. Maese,* 2011 UT App 73, 251 P.3d 843 (2011). Where the requested records have been produced, the Court is simply unable to grant meaningful relief under the Open Records Act, thus negating any justiciable controversy as to such records. If we were to reverse the circuit court's decision as to production of the documents, the reversal would have no practical effect as the Cabinet has already produced such records in conformity with the circuit court's orders. Nevertheless, the Cabinet urges this Court to reach the merits of the circuit court's decision requiring production of said records under an exception to the mootness doctrine. The Cabinet maintains that the public interest exception to the mootness doctrine is applicable, thereby empowering this Court to determine whether the circuit court properly ordered production of the records under the Open Records Act. For the following reasons, we conclude that the public interest exception does not apply to the particular facts herein.

■ The public interest exception to the mootness doctrine has three elements, which are as follows:

> The public interest exception allows a court to consider an otherwise moot case when (1) the question presented is of a public nature; (2) there is a need for an authoritative determination for the future guidance of public officers; and (3) there is a likelihood of future recurrence of the question.

*Morgan v. Getter,* 441 S.W.3d 94, 102 (Ky. 2014) (citation omitted). "All three elements must be clearly shown" by the party asserting the exception. *Berger Family Real Estate, LLC v. City of Covington,* 464 S.W.3d 160, 169 (Ky.App.2015), quoting *Morgan* at 102.

Under the third element, the Cabinet must clearly show a "likelihood of future reoccurrence of the question" presented. *Morgan,* 441 S.W.3d at 102. As is evident from the circuit court's judgments and orders, the circuit court engaged in a fact-finding analysis as to the Open Records Act and the records at issue. For example, the circuit court made fact-specific inquiries to determine if the personal privacy exemption justified redaction of information from the records, and it held a three-day evidentiary hearing. After the evidentiary hearing, the circuit court made detailed findings that the Cabinet failed to show adequate justification for the redactions based upon the personal privacy exemption of the Open Records Act. Considering the highly fact-specific nature of the circuit court's judgments and orders, as well as the unique and egregious facts present in this case, we do not believe the Cabinet has demonstrated a "likelihood of future reoccurrence of the question." *See Morgan,* 441 S.W.3d at 102.

Accordingly, we hold that the public interest exception to the mootness doctrine is inapplicable, and the portion of these appeals dealing with the propriety of the circuit court's orders to produce the requested records is moot.

## II. Attorneys' Fees, Costs, and Statutory Penalties

In Appeal Nos.2012–CA–000179–MR and 2014–CA–000540–MR, the Cabinet contends that the circuit court improperly awarded the Courier–Journal and the Herald–Leader attorneys' fees, costs, and penalties under the Open Records Act.[13]

▮▮▮ To begin, KRS 61.882(5) governs the award of attorneys' fees, costs, and penalties to the prevailing party under the Open Records Act. It reads:

> Any person who prevails against any agency in any action in the courts regarding a violation of KRS 61.870 to 61.884 may, upon a finding that the records were willfully withheld in violation of KRS 61.870 to 61.884, be awarded costs, including reasonable attorney's fees, incurred in connection with the legal action. If such person prevails in part, the court may in its discretion award him costs or an appropriate portion thereof. In addition, it shall be within the discretion of the court to award the person an amount not to exceed twenty-five dollars ($25) for each day that he was denied the right to inspect or copy said public record. Attorney's fees, costs, and awards under this subsection shall be paid by the agency that the court determines is responsible for the violation.

To be entitled to attorneys' fees, costs, and penalties under KRS 61.882(5), the circuit court must find that the public agency acted "willfully" in denying a "person" access to requested records under the Open Records Act. Willful action "connotes that the agency withheld records without plausible justification and with conscious disregard of the requester's rights." *City of Fort Thomas v. Cincinnati Enquirer*, 406 S.W.3d 842, 854 (Ky.2013). The circuit court's "decision on the issue of willfulness

is a finding of fact and, as such, will not be disturbed [on appeal] unless clearly erroneous." *Bowling v. Lexington–Fayette Urban Cnty. Gov't*, 172 S.W.3d 333, 343–344 (Ky.2005). Our Supreme Court has emphasized that "[a] public agency's mere refusal to furnish records based on a good faith claim of a statutory exemption, which is later determined to be incorrect, is insufficient to establish a willful violation of the Act." *Id.* at 343. If the circuit court awards attorneys' fees, costs, or penalties, the amount thereof is within the discretion of the circuit court and may be only disturbed on appeal when an abuse of discretion is manifest. *City of Fort Thomas*, 406 S.W.3d at 854. Our review proceeds accordingly.

In finding that the Cabinet acted willfully within the meaning of KRS 61.882(5), the circuit court's December 23, 2013 opinion and order set forth its findings of fact in meticulous detail:

> Plaintiffs assert that they are entitled to attorney's fees and costs pursuant to KRS 61.882(5), as they have been denied access to public records "willfully withheld" by the Cabinet. This Court previously held that Plaintiffs would be granted leave to supplement their request for attorney's fees, by its January 19, 2012[,] Order. Specifically, in the January 19 Order the Court stated that, "costs and attorneys fees will be assessed against the Cabinet for any redaction that is successfully challenged by the newspapers." The Cabinet has intentionally continued to employ a wholesale blanket approach to withholding public records, despite such approach being prohibited by the Open Records Act and contrary to this Court's

---

**13.** We do not view the issues of attorneys' fees, costs, and statutory penalties as moot. A case in controversy exists thereupon, and we are able to grant meaningful relief to the parties upon these issues.

repeated Orders to support any and all redactions by case by case analysis. A willful violation exists when the agency's conduct is intentional. The Court hereby makes a finding that the Cabinet did willfully withhold records in violation of the Open Records Act. Therefore, the Court hereby **GRANTS** Plaintiffs leave to seek a supplemental award of attorney[']s fees and costs.

The Courier–Journal also asks this Court to impose statutory penalties on the Cabinet for willfully withholding records. Under KRS 61.882(5) the Court may, "award the person an amount not to exceed twenty-five dollars ($25) for each day that he was denied the right to inspect or copy said public record." The Courier–Journal notes not only the Cabinet's failure to provide any meaningful case specific reasoning for redactions, but also the Cabinet's failure to produce witnesses with personal knowledge of the basis for the Cabinet's numerous redactions from these files. Even the witness designated by the Secretary to oversee compliance with the Court's orders testified that she had not personally reviewed any of the files, and could not provide meaningful testimony about the redactions. It is true that, "[a] public agency's mere refusal to furnish records based on a good faith claim of a statutory exemption, which is later determined to be incorrect, is insufficient to establish a willful violation of the Act." *Bowling v. Lexington–Fayette Urban County Government*, 172 S.W.3d 333, 343 (Ky.2005). However, in determining whether penalties are warranted pursuant to KRS 61.882(5), the Kentucky Supreme Court has recently held:

"Willful" connotes that the agency withheld requested records without plausible justification and with conscious disregard of the requester's rights. We have characterized a trial court's decision on the issue of willfulness as "a finding of fact" and, as such, it is not to be disturbed on appeal "unless clearly erroneous."

*City of Fort Thomas v. Cincinnati Enquirer*, 406 S.W.3d 842 (Ky.2013) (citing *Bowling*, 172 S.W.3d at 344). The Court finds that in the instant case statutory penalties are warranted, as the Cabinet acted with conscious disregard for the Plaintiffs' rights, and withheld voluminous records without any plausible justification. In this case, the Cabinet further attempted to delay and obstruct access to the records by adopting "emergency" regulations, and refusing to follow the statutory procedure of KRS 61.880 requiring the assertion of a specific exemption, and making an explanation of how the exemption applies.

In imposing this penalty, the Court recognizes that many employees in the Cabinet, from Commissioner James to social workers, have a genuine belief that disclosure of this information is the wrong policy. The sincerity of the beliefs of public officials on disputed legal questions is not the issue here. In this case, the Court has ruled repeatedly that these records are subject to public disclosure. The Cabinet did not appeal the Court's original ruling on this issue. Rather, the Cabinet intentionally adopted a legal strategy designated to delay, obstruct, and circumvent the Court's ruling.

The Cabinet vigorously argued that release of these documents would cause harm to the Cabinet and its clients. Yet the Court released all of the Child Fatality Review reports with minimal redactions over two years ago, and when the evidentiary hearing was held in July of 2013, the Cabinet did not put on any evidence of a single real world problem that it had encountered by virtue of the

release of the minimally redacted Child Fatality Reports. Likewise, the Court released, with minimal redactions, the full case files in the case of [K.B.] and [A.D.] over 2 years ago. Both of those cases contributed greatly to public understanding of the problem of child abuse and neglect.

Nevertheless, the Cabinet has continued to resist its most basic obligations under the Open Records Act. It has refused to conduct a meaningful case by case review of the requested files, relying instead on a protocol that calls for wholesale redactions without any balancing of competing interests of privacy and the public's need to know how its government works to protect children. This course of conduct compels the imposition of penalties.

Accordingly, the Court imposes a penalty in the amount of $10.00 per day for each of the 140 child fatality or near fatality case files. The Court shall impose this penalty from January 19, 2012[,] to the date of entry of this Order, as this was the date on which the Court entered an injunction requiring the Cabinet to turn over its case files with the minimal redaction permitted by the Court. This totals 704 days. The Court shall also subtract the 164 days (January 27, 2012[,] through July 9, 2012) during which the Court of Appeals temporarily stayed the injunction. Therefore the Court imposes fines pursuant to KRS 61.882(5) in the amount of $10/day for a period for 540 days, totaling $756,000.00.

In setting this penalty, the Court has considered not only the unnecessary delay in the release of these documents, but the fact that the Cabinet failed to conduct a good faith review of these records on a case by case basis, balancing legitimate privacy interests against the public's right to know, as required by statute. Rather the Cabinet unilat-erally adopted a protocol that called for wholesale redactions, with no meaningful balancing of the public interest in disclosure. The Cabinet's own witnesses testified that it *always* erred on the side of non-disclosure. The Court believes the penalty should also reflect that the Cabinet simply failed to devote adequate staff time to the review and release of these records, and the Cabinet should not be allowed to avoid those costs by merely shifting them to the Plaintiffs and the judicial system.

The Court notes that it is not imposing penalties for the unsuccessful assertion of privileges, but for the Cabinet's refusal to comply with the plain requirements of the statute to *assert* the privileges it claimed, and to provide an explanation of why the privilege applies. KRS 61.880. It took the Cabinet over two and a half years to comply with this basic requirement of the Act. If the Cabinet had asserted its arguments properly at the time it denied the request, and at the outset of this lawsuit, those claims of privilege could have been adjudicated in a timely and orderly fashion. Instead, the Cabinet obstructed and delayed resolution of this case by a legal strategy based on the refusal to specify and support its claims of privilege. Only after a trip through the appellate courts and remand, followed by very specific orders from this Court, did the Cabinet comply with its legal obligation to compile a privilege log that should have been provided at the time it initially denied the request in 2010. Once the privilege log was compiled, it was totally devoid of specific factual information to support its claims of privilege. The Court finds that the Cabinet's unjustified legal tactics (including adoption of the emergency regulations, and continued use of its protocol for wholesale redactions after

the Court had specifically rejected it), constitute a willful obstruction of its duty of compliance with the Act. In context of the large volume of public documents at issue in this case, and the overall budget of the Cabinet, the Court finds that this is an appropriate penalty under KRS 61.882(5).

(Citations and footnotes omitted). Based upon the circuit court's finding of willfulness, the circuit court ultimately awarded the Herald–Leader attorneys' fees and costs of $72,896.80 and the Courier–Journal attorneys' fees and costs of $228,887.06. The circuit court also imposed statutory penalties of $756,000 against the Cabinet.

■ Based upon the record and facts herein, we do not believe that the circuit court's finding of willfulness was clearly erroneous. As set forth in the circuit court's December 23, 2013 Opinion and Order, there was substantial evidence in the record to support the circuit court's finding of willfulness under KRS 61.882(5). Accordingly, we are of the opinion that the trial court acted within its discretion in awarding attorneys' fees and costs. This leaves only the question of statutory penalties for our consideration.

KRS 61.882(5) provides that, as punishment for the willful and wrongful withholding of a public record, a court may require a public agency to pay the requesting party, or "person," up to $25 "for each day that he was denied the right to inspect or copy said public record." While KRS 61.882(5) authorizes this penalty on neither a "per person" nor "per record" basis, the circuit court interpreted the statute to permit the latter, an award of up to $25 per

day for each particular record that an agency improperly and willfully withholds. The Cabinet contends that the resulting $756,000 [14] award was erroneous because the trial court should have awarded $25 per day to each "person" denied access to the 140 records.

■ The uncertainty as to whether KRS 61.882(5) permits a court to award a penalty on a per record basis or merely on a per person basis presents both a question of law and an issue of statutory construction. Therefore, we are bound by the "first and cardinal rule" of statutory construction: that courts must ascertain and give effect to the intent of the General Assembly. *See Jefferson Cnty. Bd. of Ed. v. Fell*, 391 S.W.3d 713, 718 (Ky.2012), quoting *Saxon v. Commonwealth*, 315 S.W.3d 293, 300 (Ky.2010). As our Supreme Court has observed, this rule is codified in our statutes: "All statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature." *See, e.g., Fell*, at 718, quoting KRS 446.080(1). To this end, we must make reference to the language of the statute rather than merely surmising legislative intent. *Commonwealth v. Fisher*, 74 S.W.3d 750 (Ky.App.2001); *Stopher v. Conliffe*, 170 S.W.3d 307 (Ky.2005), *overruled on other grounds by Hodge v. Coleman*, 244 S.W.3d 102 (Ky.2008). However, we "must not be guided by a single sentence of the statute but must look to the provisions of the whole statute and its object and policy." *Cnty. of Harlan v. Appalachian Reg'l Healthcare, Inc.*, 85 S.W.3d 607, 611 (Ky.2002) (citation omitted).

---

**14.** Consistent with its interpretation of KRS 61.882(5), the circuit court imposed a penalty of $10 a day per record, per day, from January 19, 2012, to December 23, 2013 (540 days total, which includes a 164-day reduction for the period of January 27, 2012, through July 9, 2012). Multiplied by the 140 individual records willfully withheld, the total penalty came to $756,000.

With uncommon clarity, and within the confines of the Open Records Act itself, the General Assembly provided us with the intent and policy behind its passage of that law:

> The General Assembly finds and declares that the basic policy of KRS 61.870 to 61.884 is that free and open examination of public records is in the public interest and the exceptions provided for by KRS 61.878 or otherwise provided by law shall be strictly construed, even though such examination may cause inconvenience or embarrassment to public officials or others.

KRS 61.871. Therefore, in looking to KRS 61.882(5) and its provision for penalties, we must remember that the individual or agency subject to such a penalty has willfully withheld what the General Assembly has deemed to be in the public's interest: the right to information of a public nature.

 In light of these well-established canons of statutory construction, we must disagree with the limited reading of KRS 61.882(5) the Cabinet proposes. Specifically, we cannot agree that the General Assembly's mere use of the word "person" demonstrated so clear an intent that penalties be imposed on a per person basis as to show the trial court's reading unreasonable or erroneous. By placing similar emphasis on other words in the same statute, we could just as easily conclude that the General Assembly's use of the term "said public record" intended the "per record" calculation the trial court adopted. Rather, when faced with such ambiguity or uncertainty, the aforementioned case law instructs us to look to "the whole statute" in ascertaining the General Assembly's intent. *Cnty. of Harlan*, 85 S.W.3d at 611.

The express object and policy of the Open Records Act is to serve the public's interest in the "free and open examination of public records[.]" KRS 61.871. This intent is served not only by the limited reading of exceptions to such a rule, as required under KRS 61.871, but also by liberal reading of those provisions aimed at the meaningful punishment of those who willfully obfuscate the public's ability to examine non-exempt records. Reading KRS 61.882(5) liberally and in conjunction with this policy as expressed throughout the Open Records Act, the trial court's interpretation and application of that statute in light of the Cabinet's conduct was entirely reasonable. Hence, the Franklin Circuit Court's award of attorneys' fees and costs fell within its discretion; and its imposition of penalties against the Cabinet survives even a non-deferential review.

### Conclusion

We hold that the portion of these appeals dealing with the circuit court's ordered production of records concerning child fatalities or near fatalities is moot, as no case in controversy remains. We also affirm the circuit court's awards of attorneys' fees and costs to the Courier–Journal and Herald–Leader and the circuit court's imposition of $756,000 in statutory penalties against the Cabinet. Finally, at the request of the Courier–Journal and Herald–Leader, we remand this matter to the trial court for consideration of post-judgment fees and costs and to re-invest that court with jurisdiction to do so. To be clear, we remand while passing no judgment as to the propriety of any such award.

The penalty we affirm is a substantial one. Substantial, too, is the legal obligation the Cabinet owed the public and the effort it expended in attempting to escape it. While it will ultimately be the public that bears the expense of this penalty, we maintain that the nominal punishment of an egregious harm to the public's right to know would come at an even greater price.

The Cabinet's conduct in this case was indeed egregious. The face of the record reveals the "culture of secrecy" of which the trial court spoke; and it evinces an obvious and misguided belief that the Open Records Act is merely an ideal—a suggestion to be taken when it is convenient and flagrantly disregarded when it is not. We could not disagree more. "Publicity," Justice Brandeis tells us, "is justly commended as a remedy for social and industrial diseases. Sunlight is said to be the best of disinfectants; electric light the most efficient policeman." LOUIS D. BRANDEIS, OTHER PEOPLE'S MONEY AND HOW THE BANKERS USE IT 92 (1913).

In sum, we affirm the trial court, but we also echo its exasperation at the Cabinet's systematic and categorical disregard for the rule of law—both as codified in the Open Records Act and as handed down by the Franklin Circuit Court. The Open Records Act is neither an ideal nor a suggestion. It is the law. Public entities must permit inspection of public records as required or risk meaningful punishment for noncompliance. Rigid adherence to this stark principle is the lifeblood of a law which rightly favors disclosure, fosters transparency, and secures the public trust.

STUMBO, JUDGE, CONCURS.

TAYLOR, JUDGE, CONCURS IN PART, DISSENTS IN PART, AND FILES SEPARATE OPINION:

TAYLOR, JUDGE, DISSENTING:

I fully concur with the majority affirming the award of attorneys' fees and costs and agree that the Cabinet acted willfully within the meaning of KRS 61.882(5). However, I respectfully dissent as concerns the award of penalties under KRS 61.882(5) and would remand for further proceedings thereon. My reasoning follows.

KRS 61.882(5) provides that a person may be awarded up to $25 "for each day that he was denied the right to inspect or copy said public record." The circuit court interpreted KRS 61.882(5) to permit an award of up to $25 per day for each particular record that was improperly and willfully withheld by a public agency. In accordance therewith, the circuit court imposed a penalty of $10 a day per record from January 19, 2012, to December 23, 2013 (540 days total, which includes a 164-day reduction for the period of January 27, 2012, through July 9, 2012). As there were ultimately a total of 140 individual records willfully withheld, the circuit court awarded a total of $756,000 in penalties under KRS 61.882(5). I believe the majority's interpretation of KRS 61.882(5) as to penalties to be in error as a matter of law.

It is well established that the interpretation and construction of a statute presents an issue of law for the court. *Monumental Life Ins. Co. v. Dept. of Revenue*, 201 S.W.3d 500 (Ky.App.2006). When interpreting a statute, the intent of the legislature controls, and such intent should be determined by reference to the language of the statute rather than the court merely surmising legislative intent. *Com. v. Fisher*, 74 S.W.3d 750 (Ky.App.2001); *Stopher v. Conliffe*, 170 S.W.3d 307 (Ky.2005), *overruled on other grounds by Hodge v. Coleman*, 244 S.W.3d 102 (Ky.2008). More specifically, the Kentucky Supreme Court has instructed that a court must "ascertain the intention of the legislature from words used in enacting statutes rather than surmising what may have been intended but not expressed." *Stopher*, 170 S.W.3d at 309 (quoting *Flying J Travel Plaza v. Com. of Ky. Transp. Cabinet*, 928 S.W.2d 344, 347 (Ky.1996)).

KRS 61.882(5) specifically states that a court may award a "person" up to $25 for

each day that *"he* was denied the right to inspect or copy" a public record. (Emphasis added.) The court record reflects that the Courier–Journal and Herald–Leader each made one cumulative request for records resulting in the 140 records being wrongfully withheld, which triggered the penalty provisions. There were not 140 separate record requests made in this case. Considering the language as set forth in KRS 61.882(5), I view the statute as providing a statutory penalty of a maximum of $25 for each day that each newspaper entity was willfully denied the right to inspect public records per each separate request, rather than up to $25 for each record. The majority interpretation raises the fine to $1,400 per day, although only two record requests were made. My interpretation better comports with the specific language of KRS 61.882(5) that the court may award a "person" up to $25 per day in penalties. Thus, under KRS 61.882(5), a person may be awarded a maximum of $25 per day that he was improperly and willfully denied the right to inspect records under the Open Records Act. I believe the circuit court's interpretation of KRS 61.882(5), as upheld by the majority, overlooked the legislative intent as set forth in the statute's specific language.

As the circuit court erroneously awarded penalties of $10 a day for each record, rather than each cumulative request, I believe the court abused its discretion by awarding $756,000 in statutory penalties under KRS 61.882(5). I would reverse and remand this award. Upon remand, the circuit court could only award the Courier–Journal a maximum of $25 per day and the Herald–Leader a maximum of $25 per day for each of the 540 days that they were willfully denied the right to inspect the records of the Cabinet.