RENDERED:  FEBRUARY 18, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0007-MR

THE COURIER-JOURNAL, INC.                                        APPELLANT

v.               APPEAL FROM JEFFERSON CIRCUIT COURT
                 HONORABLE AUDRA J. ECKERLE, JUDGE
                 ACTION NO. 19-CI-007351

LOUISVILLE/JEFFERSON COUNTY
METRO GOVERNMENT, BY AND
THROUGH THE LOUISVILLE
POLICE DEPARTMENT                                                  APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  GOODWINE, K. THOMPSON, AND L. THOMPSON, JUDGES.

GOODWINE, JUDGE:  The Courier-Journal, Inc. ("Courier-Journal") appeals the

December 10, 2020 order of the Jefferson Circuit Court voluntarily dismissing the

action brought by Louisville/Jefferson County Metro Government, by and through

the Louisville Metro Police Department ("Louisville Metro").  After careful

review, we affirm.

This appeal arises from an open records request made by the Courier-Journal for Louisville Metro Police Department ("LMPD") records relating to its internal investigation of sexual abuse allegations against officers involved in its Explorer Program. Upon the Courier-Journal's request, LMPD claimed it did not have the records in its possession because they had been removed from its servers and transferred to the Federal Bureau of Investigation ("FBI") which was also investigating the allegations against officers through an LMPD/FBI joint task force. The FBI and LMPD executed a memorandum of understanding ("MOU") setting out the parameters of the joint task force.

After the LMPD refused to provide the requested records, the Courier-Journal appealed to the Office of the Attorney General ("OAG"). The OAG determined the LMPD violated KRS[1] 61.880(1) and found

> LMPD initially failed to cite the statutory basis for withholding responsive investigation records and a [MOU] with the [FBI], but corrected the error on appeal relating to the investigation records. LMPD violated the [Open Records] Act by initially denying the request on an erroneous presumption of non-possession of the responsive records. LMPD failed to meet its burden of proof in withholding the responsive records.

Record ("R.") at 9.

---

[1] Kentucky Revised Statutes.

Louisville Metro appealed the OAG opinion to the circuit court under KRS 61.880(5)(a). After discovery commenced, Louisville Metro moved to dismiss the action. The Courier-Journal responded by requesting the circuit court retain jurisdiction to supervise Louisville Metro's compliance with the OAG decision.[2] The Courier-Journal also requested assessment of attorney's fees and penalties under KRS 61.882(5). The circuit court granted Louisville Metro's motion and dismissed the action. This appeal followed.[3]

"Dismissal on motion under [CR[4] 41.01(2)] is within the sound discretion of the court, and its order is reviewable only for abuse of discretion." *Louisville Label, Inc. v. Hildesheim*, 843 S.W.2d 321, 324 (Ky. 1992) (citation omitted). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Porter v. Allen*, 611 S.W.3d 290, 294 (Ky. App. 2020) (citation omitted).

On appeal, the Courier-Journal argues: (1) the circuit court improperly granted Louisville Metro's motion to dismiss the action; and (2) the

---

[2] The Courier-Journal contemporaneously filed an action, circuit case No. 20-CI-007395, seeking enforcement of the OAG's opinion by the circuit court. The enforcement action is in abeyance pending resolution of this appeal.

[3] The Jefferson County Attorney's Office filed a motion for leave to file an *amicus curiae* brief which we deny and strike by separate order. The arguments in the brief are not relevant to the issues pending on appeal.

[4] Kentucky Rules of Civil Procedure.

circuit court should have ordered Louisville Metro to pay attorney's fees and penalties under KRS 61.882(5).

First, the circuit court properly granted Louisville Metro's motion to dismiss the action. CR 41.01(2) allows the circuit court to dismiss an action on the plaintiff's motion. The rule allows dismissal to be conditioned on "such terms and conditions as the court deems proper." *Id.* These terms and conditions are within the broad discretion of the circuit court. *Hildesheim*, 843 S.W.2d at 325 (citation omitted). The circuit court must determine "whether the opposing party will suffer some substantial injustice or be substantially prejudiced" by dismissal. *Sublett v. Hall*, 589 S.W.2d 888, 893 (Ky. 1979).

Under the Kentucky Open Records Act ("KORA"), a party, such as Louisville Metro, has the right to appeal the decision of the OAG. KRS 61.880(5)(a). Where no appeal is filed within thirty days or, as occurred here, the appeal is voluntarily dismissed, "the Attorney General's decision shall have the force and effect of law and shall be enforceable in the Circuit Court of the county where the public agency has its principal place of business or the Circuit Court of the county where the public record is maintained." KRS 61.880(5)(b). Because the Courier-Journal can seek supervision of Louisville Metro's compliance with the OAG's opinion through its separately filed enforcement action, it has suffered

-4-

no substantial injustice or prejudice from dismissal of the action herein. Therefore, dismissal was appropriate.

Next, the Courier-Journal is not entitled to attorney's fees or penalties under KRS 61.882(5). KORA provides

> [a]ny person who prevails against any agency in any action in the courts regarding a violation of KRS 61.870 to 61.884 may, upon a finding that the records were willfully withheld in violation of KRS 61.870 to 61.884, be awarded costs, including reasonable attorney's fees, incurred in connection with the legal action. If such person prevails in part, the court may in its discretion award him costs or an appropriate portion thereof. In addition, it shall be within the discretion of the court to award the person an amount not to exceed twenty-five dollars ($25) for each day that he was denied the right to inspect or copy said public record. Attorney's fees, costs, and awards under this subsection shall be paid by the agency that the court determines is responsible for the violation.

KRS 61.882(5). Before the circuit court can grant attorney's fees, costs, or penalties under this subsection, the party seeking such awards must prevail against the agency and the court must make a finding that the agency willfully withheld the records in violation of KORA. Because the action was dismissed without any such findings by the circuit court, the Courier-Journal is not entitled to attorney's fees or other awards under KRS 61.882(5).

Based on the foregoing, the order of the Jefferson Circuit Court is affirmed.

THOMPSON, L., JUDGE, CONCURS.

THOMPSON, K., JUDGE, DISSENTS AND FILES SEPARATE OPINION.

THOMPSON, K., JUDGE, DISSENTING:  Respectfully, I dissent. Given the egregious facts alleged in this case, I wholeheartedly believe the circuit court abused its discretion in allowing the Louisville/Jefferson County Metro Government, by and through the Louisville Police Department (Louisville Metro) to voluntarily dismiss this action appealing from *In re: Jon Fleischaker/Louisville Metro Police Department*, Ky. Op. Atty. Gen. 19-ORD-198, 2019 WL 5663408 (Oct. 24, 2019), without conditions.

I would reverse and remand with directions for the Jefferson Circuit Court to make granting *any* dismissal subject to ongoing supervision to ensure compliance with the open records enforcement decision from the Office of the Attorney General (the OAG), require the circuit court to consider awarding penalties and fees equivalent to what would be appropriate per Kentucky Revised Statutes (KRS) 61.882(5) as a condition of granting the dismissal, and recommend consolidating the enforcement action with this action.

**FACTUAL BACKGROUND**

On May 28, 2019, the Courier-Journal requested records relating to the Explorer Program and "the investigative case file pertaining to the sexual abuse allegations against former [Louisville Metro Police Department (LMPD)] officer

Brandon Wood." The LMPD denied the open records request on May 29, 2019, stating "[t]his office has been advised that the [Explorer Program] case was investigated by the [Federal Bureau of Investigation (FBI) Public Corruption Taskforce] and they are the custodians of records." *In re: Jon Fleischaker*, 19-ORD-198, at \*1.

## I.     The Appeal to the Attorney General

The Courier-Journal appealed to the Attorney General, arguing the LMPD failed to cite a statutory basis for withholding the records and could not avoid turning the records over by claiming the FBI was the official custodian.

On September 3, 2019, the LMPD responded to the open records appeal in a letter signed by Assistant Jefferson County Attorney A.T.[5] (the former Assistant County Attorney) which stated, "LMPD does not have the possession or control of the records" asserting that all materials had already been turned over to the FBI in March 2017. The letter unequivocally stated that "all copies of the investigative materials, physical and digital, and any of the investigative materials were physically removed from the premises, digital devices, and servers of LMPD" and the LMPD "has not been involved in any part of the investigation after March

---

[5] I use initials and titles throughout this dissent because the Courier-Journal's allegations are unproven at this time. It is appropriate to do so, in order to protect the identities of those alleged to have committed wrongdoing or whose testimony may make them vulnerable to possible retribution.

2017 and no records pertaining to it have been provided to LMPD, created by LMPD, or stored on any LMPD computers or other electronic equipment."

The LMPD admitted that it failed to state that it did not possess responsive records "nor did it conduct a search upon receiving [the open records] request" as "[h]aving known the investigative files were removed from LMPD's possession in March 2017, [the Public Integrity Unit (PIU)] reasonably believed it would have no responsive records within [its] possession." The LMPD admitted to discovering that an investigator had inadvertently saved one page of the investigative file on an LMPD server, but that it was immediately removed from its possession and was exempt because the four PIU investigators were sworn to secrecy pursuant to the Federal Rules of Criminal Procedure (Fed. R. Crim. P.) 6(e). The letter concluded "[a]s a result of LMPD's non-possession of any responsive records and the FBI's ownership of the investigation, LMPD is not required to cite to any statute authorizing the withholding of the records; there are simply just no records to produce."

On September 4, 2019, the Courier-Journal then asked for an *in camera* review to substantiate the claim that Fed. R. Crim. P. 6(e) was a ground for withholding responsive records. The OAG requested a memorialization of any confidentiality or nondisclosure agreements between the LMPD and FBI or United States Attorney's Office.

On September 18, 2019, the LMPD, again through the former Assistant County Attorney, stated to the OAG that it located an additional "approximately 9,000 documents related to the investigation" in "hidden folders" and "arranged for Louisville Metro Government's IT department to remove them from the system and provide them to the FBI." The former Assistant County Attorney further disclosed to the OAG the affidavit of the then, and now former, LMPD Chief of Police (the former Chief of Police)[6] and the Memorandum of Understanding (MOU) between the LMPD and the FBI. A redacted affidavit of the former Chief of Police was produced to the Courier-Journal.

The former Chief of Police's affidavit specifically stated "[a]t the time of the FBI's adoption of the investigation, the LMPD investigative records relating to this specific investigation were removed from LMPD to be stored and maintained by the FBI as it was no longer an LMPD investigation." The former Chief of Police further stated that pursuant to the MOU between the LMPD and the FBI that all task force investigative record would be maintained by the FBI and finally concluded that "[i]t is for the reasons outlined above that the investigative file is not within the custody or control of the LMPD."

---

[6] The former Chief of Police's employment with the LMPD ended on June 1, 2020, for reasons unrelated to the open records request.

After the Attorney General reviewed these materials, he concluded that the LMPD violated KRS 61.880(1) by: (1) failing to search for responsive records; (2) failing to cite a statutory basis for withholding the records but partially corrected the error on appeal; (3) denying the request based on the initial presumption of non-possession of the responsive records where the LMPD continued to have access to all task force records; and (4) failed to meet its burden of proof in withholding the responsive investigative record and the MOU. *In re: Fleischaker*, 19-ORD-198, 2019 WL 5663408, at *3-6.

## II.     The Appeal of 19-ORD-198 to the Circuit Court

On November 21, 2019, Louisville Metro appealed this decision to the Jefferson Circuit Court through the filing of a complaint which was signed by the former Assistant County Attorney. Louisville Metro unequivocally stated in its complaint that "LMPD does not have possession or control of the requested records." Louisville Metro repeatedly stated that the FBI had possession of all of the records and "[s]ince the removal of the investigative records from LMPD, no records pertaining to the investigation have been provided to LMPD, created by LMPD, or are intended to be stored on any LMPD computers or other electronic equipment." Louisville Metro disagreed with each of the OAG findings and asked that 19-ORD-198 be reversed.

The Courier-Journal's answer specifically asserted that it was entitled to penalties and fees, explaining under a heading to that effect:

> The Open Records Act permits a court to award attorneys' fees and up to $25 per record, per day in statutory penalties to a requester if it determines an agency willfully violated the Act. *See* KRS 61.882(5). LMPD's conduct in this case is so egregious that it merits the maximum fine permitted under the law. LMPD found 9,000 responsive records . . . during the pendency of the [OAG] appeal, but took it upon itself to delete those responsive records without telling the Attorney General or the Courier Journal. Those records, which LMPD contends are now unavailable, would have shed light on LMPD's handling of one of the more serious scandals ever to occur within LMPD, which has resulted – to date – in multiple federal criminal plea deals. The public has a right to know what happened within the department, and it cannot be permitted to frustrate that right by resorting to self-help as it has tried to do. This Court should award statutory penalties against LMPD in the amount of $25 per day, per file from the date LMPD removed the 9,000 files from its system through the date of this Court's judgment.

The Courier-Journal also explicitly requested, pursuant to KRS 61.882(5), a finding that there was a willful violation of the Open Records Act entitling it to attorney fees, and an award of costs, including reasonable attorney fees and statutory penalties in the maximum amount permitted by law.

Shortly thereafter, the former Assistant County Attorney left the Jefferson County Attorney's office. She was replaced by two successive Assistant Jefferson County Attorneys in representing Louisville Metro.

The Courier-Journal attempted to engage in discovery. However, the Courier-Journal was dissatisfied with the discovery it had received and therefore, on November 23, 2020, filed a motion to compel discovery and production of documents. It argued that over a seven-month period Louisville Metro only produced a handful of responsive emails and withheld a substantial amount of records claiming privilege, noting Louisville Metro for weeks implied the production of a substantial quantity of supplemental documents was "on its way" and, as a result, the Courier-Journal pushed back planned depositions to await the production of the relevant material. The Courier-Journal complained that after this delay, "[n]ow the city claims to have no responsive documents at all." The Courier-Journal detailed a pattern of delayed, incomplete responses, extensive assertions of privilege and other obfuscations.

On October 21, 2020, in a letter to the Courier-Journal's counsel, Assistant Jefferson County Attorney R.D. (the subsequent Assistant County Attorney) stated that after Sgt. R.B. (Officer One) removed the files from the LMPD system for delivery to the FBI on September 10, 2019, 358.28 megabytes remained on the servers and Officer One removed not approximately 9,000 *files*, but 9,700 *folders* containing approximately 738,000 files with a total amount of data of over 470 gigabytes. The subsequent Assistant County Attorney stated that the removed files were available via encrypted backup for thirty days, but then

were available to be written over and the encryption key was permanently deleted. The subsequent Assistant County Attorney stated that Louisville Metro attempted to recover the production of the files in a different civil action, but the FBI filed a motion to quash and only released 89,000 files to Louisville Metro which were subject to a protective order prohibiting their dissemination. However, what if any records would be released to the Courier-Journal was left unclear as the subsequent Assistant County Attorney explained:

> To the extent allowed by law, and in compliance with Kentucky Attorney General Open Records Decision OAG 19-ORD-198, [Louisville] Metro agrees to request records from the FBI and United States Attorney's Office and turnover any records in its possession which are responsive to the Courier's open records request at issue. Because responsive documents are subject either to a protective order in Civil Action No. 3:18-cv-151, are presently exempt from production pursuant to KRS 17.150 and KRS 61.880 et. seq., or contain the identity of minors, child pornography, victims of crimes, etc., certain records may not be released. It is Metro's intent to comply with the law as interpreted by state and federal courts in this matter and produce what records it is able to produce.

Before the motion to compel was heard, on November 13, 2020, the subsequent Assistant County Attorney requested that he and the Jefferson County Attorney be permitted to withdraw as Louisville Metro had retained private counsel which had already appeared. This motion was immediately followed by a motion to dismiss the appeal. According to the Courier-Journal, Louisville Metro

then tried to cancel its scheduled depositions of Officer One and Sgt. K.D. (Officer Two), which were both scheduled for November 19, 2020, but the Courier-Journal refused, and these depositions took place as scheduled.

### III. The Motion to Dismiss the Appeal

The November 17, 2020 motion to dismiss the appeal simply stated that counsel on behalf of Louisville Metro "hereby motions the [c]ourt to dismiss the appeal" of the OAG and noted that "[a]n appropriate Order is attached." There was no accompanying brief and the motion did not explain under what Kentucky Rules of Civil Procedure (CR) it was proceeding, why Louisville Metro wanted to dismiss the appeal, or why dismissal was appropriate.

On November 20, 2020, the Courier-Journal filed a lengthy response to the motion to dismiss. In it, the Courier-Journal argued that dismissal should only be granted upon the terms and conditions that the circuit court retain jurisdiction to enforce 19-ORD-198, award statutory fees and penalties under KRS 61.882(5), and continue to supervise "ongoing and forthcoming discovery into the willfulness of Louisville Metro's actions." The Courier-Journal explained that it believed that Louisville Metro's moving for dismissal meant that Louisville Metro had now agreed to comply with the Attorney General's ruling, but a determination of what penalties were appropriate would be dependent upon when and to what extent Louisville Metro produced records in accordance with 19-ORD-198. The

Courier-Journal expressed a fear that the motion to dismiss was just one more tactic to delay producing the required records.

In justification of these requested terms and conditions, the Courier-Journal made allegations detailing a shocking course of action by Louisville Metro and its counsel to willfully evade and subvert Kentucky's Open Records Act by lying about the unavailability of records, actively concealing and removing records and placing them with the FBI, and then proceeding with a meritless appeal of 19-ORD-198 to the circuit court in an attempt to further delay required production of these records. The Courier-Journal alleged that numerous files were available regarding the Explorer Program at the time it made its open records request in May 2019 and alleged that the LMPD in fact knew at the time of its denial that it had numerous responsive documents but rather than admit its error and turn over the responsive documents it instead engaged in a gigantic organized cover-up which included the former Chief of Police (who filed a false affidavit), the former Assistant County Attorney, and the LMPD's legal advisor, D.S. (the LMPD Legal Advisor).

In support of this assertion, the Courier-Journal heavily relied upon June 6, 2019 emails sent from Officer One to the former Assistant County Attorney and the former Chief of Police (which the LMPD Legal Advisor was copied on) advising of the current availability of the Explorer files. These emails

were sent *more than two years after* the LMPD claimed that all of the Explorer files were removed from its possession and lodged with the FBI and shortly before the former Chief of Police and the former Assistant County Attorney denied their availability.

In one email Officer One states:

Our investigative team has advised that we can provide any and all documents involved in the Explorer investigation up until April 1st, 2017[.] . . . Assistant United States Attorney Jo Lawless, would need to be consulted by the County Attorney's Office prior to our releasing any information contained in the file after April 1st, 2017. . . .

The information previously furnished to the LMPD Executive Management in March 2017 included copies of documents from the main PIU file. All of that information still resides in the PIU case file and is available to the County Attorney's Office.

[**The former Assistant County Attorney**] – **Please advise what specific information you still need at this time and we will ensure you have it by COB tomorrow, 06/07/2019. Again, please keep in mind that we cannot furnish anything after April 1st, 2017, until it is properly coordinated with the United States Attorney's Office**.

In a later email that day in this same chain of emails, in which the former Assistant County Attorney, the former Chief of Police, and the LMPD Legal Advisor were copied on, Officer One told Major H., "I just spoke with [the former Assistant County Attorney] regarding audio files she needs for PIU case

-16-

16-063. Sergeant [S.G.] is going to provide her with all the audio records she needs up to April 1, 2017."

The Courier-Journal argued these emails are evidence that the former Assistant County Attorney, the former Chief of Police, and the LMPD Legal Advisor should have known that responsive records were available at the time the LMPD denied having any responsive records and that their representations that LMPD did not have any of the Explorer investigative records after the FBI became involved in March 2017 were knowingly false.

Although the depositions of Officer One and Officer Two had already been held, they had not yet been transcribed; therefore the Courier-Journal only briefly alluded to the information contained therein in this motion, stating:

> [T]he officers testified about the harassment they received within the LMPD while conducting the Explorer Investigation, the use of LMPD servers for electronic data storage throughout the investigation, the awareness of the other LMPD officers and supervisors of the PIU file, and the order from LMPD leadership in September 2019 to transfer all files to an external hard drive immediately, regardless of how much overtime it would take.

In a proposed order of dismissal with conditions, the Courier-Journal suggested that the circuit court: (1) grant Louisville Metro's motion to voluntarily dismiss its appeal; (2) affirm the OAG's order; (3) retain jurisdiction to enforce the OAG order, its order, and the Courier-Journal's claims for fees and penalties,

including discovery and motion practice; (4) order Louisville Metro to timely respond to the October 23, 2020 requests for admission; (5) order the Courier-Journal to have sixty days to conduct additional discovery into issues related to its claim for attorney fees and statutory penalties; (6) allow the Courier-Journal fifteen days to file a motion for fees and penalties after the close of this discovery; and (7) issue a final judgment after adjudicating any motion for fees and penalties.

On November 23, 2020, a brief five-minute hearing was held on the motion to withdraw and motion to dismiss the appeal. The Courier-Journal explained that the circuit court needed to retain jurisdiction to enforce compliance with the OAG order, award penalties, and enforce outstanding discovery and ongoing discovery. The circuit court noted that it had not seen the Courier-Journal's response and it would review that and allow Louisville Metro to respond.

On December 7, 2020, Louisville Metro filed a response arguing there was no basis for the circuit court to retain jurisdiction so that the Courier-Journal could continue to engage in discovery and pursue fees and penalties, when that was not the purpose of Louisville Metro's appeal.

On December 10, 2020, the Courier-Journal requested the opportunity to file a further response, but this was not granted. Instead, on that same date, the circuit court granted Louisville Metro's motion to dismiss by signing its proposed order. The Courier-Journal appealed.

## IV. The Enforcement Action

On December 23, 2020, the Courier-Journal filed a separate enforcement action in Jefferson Circuit Court, *Courier-Journal, Inc. v. Louisville/Jefferson Metro Government*, No. 20-CI-007395, in which it sought disclosure of the Explorer investigative record and statutory fees and penalties. This action was assigned to a different judge.

On January 19, 2021, Louisville Metro filed a motion to dismiss with prejudice on the basis that the Courier-Journal was seeking the same relief in its enforcement action as it sought on appeal in this action, it was forum shopping in filing the enforcement action, and there could be inconsistent results in the two cases.

I believe such an argument was specious as by dismissing its appeal, Louisville Metro allowed 19-ORD-198 to have the full force and effect of law as if it were never appealed, thus justifying an enforcement action by the Courier-Journal. *See generally Cabinet for Health and Family Services v. Todd County Standard, Inc.*, 488 S.W.3d 1, 7 (Ky.App. 2015) (explaining the effect of not filing an appeal from an OAG order).

On February 12, 2020, the Courier-Journal filed a motion for summary judgment which also served as a response to the motion to dismiss. The Courier-Journal again laid out the entire course of conduct regarding the refusal to

-19-

disclose the records, explained that Louisville Metro's dismissal of its appeal meant that 19-ORD-198 was now final, and noted that 19-ORD-198 was clear that "Louisville Metro has access to the entire Explorer investigation file, and it has no legal basis to withhold it. Thus, Louisville Metro must disclose the entire investigative file to the Courier Journal."

The Courier-Journal also explained that Louisville Metro had declined to produce most of the documents it acknowledged that it still possessed, and that there was reason to believe that Louisville Metro in fact continued to have access to the entire Explorer investigation file on its servers, or if for some reason the file is no longer on its servers, it still has access to the file under the MOU and should be required to produce it. The Courier-Journal disputed that it was forum shopping and explained it had sought to have the original appeal remain open for enforcement and fee purposes and had only filed this enforcement action because Louisville Metro had gained a voluntary dismissal without conditions. It also filed exhibits to this motion, including the depositions of Officer One and Officer Two.

On July 12, 2020, following a status hearing, the circuit court in the enforcement action ordered that matter to be held in abeyance pending the resolution of the instant appeal.

**ARGUMENTS ON APPEAL**

On appeal, the Courier-Journal reiterates its arguments regarding why the circuit court should have conditioned the dismissal of Louisville Metro's appeal of 19-ORD-198 on continuing the case in order to order Louisville Metro to fully comply with the OAG's open records decision by releasing the entire, unredacted investigative file, allowed it to proceed with discovery, and should have then proceeded to make a finding that Louisville Metro's noncompliance with the OAG's decision was willful and awarded it attorney fees and penalties.

The Courier-Journal is alleging reprehensible tactical gamesmanship in which Louisville Metro acted in bad faith in appealing *In re: Fleischaker* and engaging in protracted oppositional litigation knowing its position was erroneous and not legally defensible based on facts within its knowledge; that it still had access to the responsive records, both through its own computers and server and through being able to access the materials it had transferred to the FBI and was not precluded by the MOU with the FBI from producing these records. *In re: Fleischaker*, 19-ORD-198, 2019 WL 5663408, at *6.

The Courier-Journal alleges Louisville Metro repeatedly delayed responding to discovery and that the motion to dismiss was an attempt to stop undesirable information from being revealed during discovery beginning with the depositions of Officer One and Officer Two. The Courier-Journal explains that the

testimony in these depositions confirmed that, as it had suspected, the LMPD's conduct was even worse than that found by the OAG in its decision.

The Courier-Journal asserts that Officer One's and Officer Two's deposition testimony, which it attached as exhibits to its appellate brief,[7] revealed that the former Assistant County Attorney's statements denying the availability of the Explorer file on behalf of the LMPD on the basis that the information did not exist in the LMPD's files was incorrect. It explained that Officer One directly testified that at the time of the open records denial, "after March 2017 we still had our PIU case still on our LMPD computer . . . to get to our Explorer file." Officer One testified that "Major [J.S.] made the statement that [the LMPD Legal Advisor] had said something on open records that we didn't have information and that we needed to transfer [the Explorer files] to an external hard drive and keep it over at the FBI." Therefore, Officer One and Officer Two testified they were ordered by Major J.S. at the behest of the LMPD Legal Advisor to remove files from the

---

[7] These depositions were not made part of the record below simply because of how quickly everything transpired: (1) the motion to dismiss the appeal was filed on November 17, 2020; (2) the depositions were taken on November 19, 2020; (3) the Courier-Journal filed its response to the motion to dismiss on November 20, 2020, noting in a footnote that the depositions had yet to be transcribed; and (4) the circuit court granted the motion to dismiss on December 10, 2020, without allowing the Courier-Journal to make an additional response. I note that Louisville Metro did not make a motion to strike the depositions and the Courier-Journal did not make a motion to supplement the record with them. Louisville Metro does not dispute the accuracy of these depositions but does suggest they contain hearsay. My analysis does not require their consideration, but I believe discussing them is appropriate in this particular case, given this timeline and other circumstances specific to this case, as they provide additional support for the Courier-Journal's allegations.

LMPD's servers and put them on external hard drives to deliver them to the FBI, with this taking place over a weekend in September 2019.

Officer One testified that it was not easy to remove these records and it required the assistance of the IT department "because it was a lot of data[.]" Officer One further explained:

> [M]y LMPD computer couldn't transfer the information to an external hard drive, so I had to reach back out to Major [J.S.] and let him know and that it was going to be a lengthy process.
>
> **And he [Major J.S.] told me that per [the LMPD Legal Advisor], it didn't matter how much overtime to do it, but we needed to get it done**. And so we transferred the data over the course of a weekend, and we kept it in our possession at the FBI.

(Emphasis added.) Officer One noted he put in for overtime with detailed notes of what they were doing and submitted this to Major J.S.

Officer Two confirmed in her deposition testimony that, regarding the transferring of these computer files, Officer One told her: "something to the effect that [**the LMPD Legal Advisor**] **wanted this done. It didn't matter how much overtime it cost**. Get it done over the course of this weekend. Like, don't care how much overtime it takes, just do it." (Emphasis added.) This removal would have thus taken place while the open records appeal was pending before the OAG.

However, the Courier-Journal noted that according to the deposition testimony of both Officer One and Officer Two, those electronic records should

-23-

still exist in LMPD's servers because they were backed up to the Cloud and the IT service requests about copying such records indicated that nothing was deleted. The Courier-Journal explains that this means that either the October 21, 2020 letter from the subsequent Assistant County Attorney is inaccurate that the Explorer file was removed from the LMPD servers and the LMPD is continuing to obfuscate, or a later action was taken to delete these files to thwart the Open Records Act request which was pending before the OAG or had been concluded.

Based on this evidence, the Courier-Journal argues that Louisville Metro knowingly made false statements of having no responsive records in its legal pleadings before the circuit court. Additionally, the Courier-Journal asserts that the LMPD even now refuses to disclose items as required by the OAG decision which has been finalized by the dismissal. The Courier-Journal explained that after the dismissal the LMPD only provided some 2250 heavily redacted pages, which even if each page constituted a separate document would only account for some .3% of the 738,000 responsive documents ordered to be removed from the LMPD's possession *after* the Courier-Journal made its open records request. It is for these reasons that the Courier-Journal asserts that the circuit court should have continued the case so that it could order Louisville Metro to fully comply with 19-ORD-198 by releasing the entire, unredacted investigative file, and proceed to award the Courier-Journal attorney fees and penalties for Louisville

-24-

Metro's willful violations. The Courier-Journal argues the circuit court erred by failing to adjudicate its claim for attorney fees and penalties.

Louisville Metro in its appellate brief accuses the Courier-Journal of gamesmanship in filing an enforcement action on the same day as it filed its appeal. Louisville Metro denies that the circuit court has the jurisdiction to grant the Courier-Journal's requests for relief and further denies that fees would be appropriate where its actions were not willful. Louisville Metro further argues that the Courier-Journal has already received "all responsive, nonexempt public documents concerning Officer Wood that were generated prior to April 1, 2017" and states that it cannot disclose anything further due to a federal protective order in another case. Louisville Metro acknowledges making some "good faith mistakes" but argues that "all responsive documents have been disclosed at this point" and "there is nothing left to 'enforce[.]'"

## ANALYSIS

Having thoroughly reviewed the factual background of this case, I now address whether the dismissal was appropriate under the circumstances.

CR 41.01(1) allows for a dismissal by a plaintiff by stipulation before an answer or motion for summary judgment has been filed. After that point, "an action . . . shall not be dismissed at the plaintiff's instance save upon order of the

court and upon such *terms and conditions* as the court deems proper." CR

41.01(2) (emphasis added).

Appellate courts review the grant of a motion to voluntarily dismiss

under CR 41.01(2) for abuse of discretion. *Sublett v. Hall*, 589 S.W.2d 888, 893

(Ky. 1979).

> Many things must be taken into consideration by the trial
> judge prior to entering an order dismissing an action
> without prejudice. Some of the salient inquiries that the
> judge may desire to make could be:
>
> 1. What preparation has the opposing parties and their
>    counsel made for trial?
>
> 2. What was the lapse of time between the filing of the
>    complaint and the date of the motion to dismiss?
>
> 3. Will a dismissal without prejudice be prejudicial to
>    the opposing parties?
>
> 4. Will the dismissal without prejudice act as an
>    adjudication of the issues made by the pleadings?
>
> 5. Should the order of dismissal contain terms and
>    conditions?
>
> 6. Would any term or condition attached to the order
>    prejudice the movant?
>
> In essence, the basic criterion is whether the opposing
> party will suffer some substantial injustice or be
> substantially prejudiced.

*Id.*

Having thoroughly reviewed the history of what is alleged to have taken place regarding this open records matter, and having considered these factors, I believe a full dismissal should not have been granted as it prejudiced the Courier-Journal's position and allowed Louisville Metro to further delay making required disclosures.

The most closely analogous situation to that before us is the allegations of the reprehensible conduct which took place in *Cabinet for Health and Family Services v. Courier-Journal, Inc*., 493 S.W.3d 375 (Ky.App. 2016), where the Cabinet refused an open records request to produce records of children under the Cabinet's supervision who suffered fatalities or near fatalities. There, the Cabinet promulgated regulations to justify denying such requests and additionally refused to produce the records, claiming they were exempt "under the personal privacy, ongoing criminal proceeding, and other exemptions found in the Open Records Act[.]" *Id.* at 380.

When the circuit court ordered the Cabinet to produce the records and specifically stated what could be redacted, the Cabinet repeatedly sought to block having to produce the records through unsuccessful interlocutory actions to our Court and then inappropriate redactions; subsequent orders and hearings were required to finally make the Cabinet produce appropriate records, properly justifying an award of costs, fees, and penalties for this willful behavior. *Id.* at

380-82. The circuit court found "the Cabinet acted with conscious disregard for the Plaintiffs' rights, and withheld voluminous records without any plausible justification." *Id.* at 385. It expressed its exasperation at the Cabinet's continuing conduct "resist[ing] its most basic obligations under the Open Records Act." *Id.* at 386.

In affirming the penalty, our Court explained its reasoning as follows:

The penalty we affirm is a substantial one. Substantial, too, is the legal obligation the Cabinet owed the public and the effort it expended in attempting to escape it. While it will ultimately be the public that bears the expense of this penalty, we maintain that the nominal punishment of an egregious harm to the public's right to know would come at an even greater price.

The Cabinet's conduct in this case was indeed egregious. The face of the record reveals the "culture of secrecy" of which the trial court spoke; and it evinces an obvious and misguided belief that the Open Records Act is merely an ideal – a suggestion to be taken when it is convenient and flagrantly disregarded when it is not. We could not disagree more. "Publicity," Justice Brandeis tells us, "is justly commended as a remedy for social and industrial diseases. Sunlight is said to be the best of disinfectants; electric light the most efficient policeman." Louis D. Brandeis, Other People's Money and How the Bankers Use It 92 (1913).

In sum, we affirm the trial court, but we also echo its exasperation at the Cabinet's systematic and categorical disregard for the rule of law – both as codified in the Open Records Act and as handed down by the Franklin Circuit Court. The Open Records Act is neither an ideal nor a suggestion. It is the law. Public entities must permit inspection of public records as

-28-

required or risk meaningful punishment for noncompliance. Rigid adherence to this stark principle is the lifeblood of a law which rightly favors disclosure, fosters transparency, and secures the public trust.

*Id.* at 388-89.

If the Courier-Journal's allegations before us involving Louisville Metro and the LMPD are true, this is an even more egregious situation than that involving the Cabinet, because not only did the LMPD refuse to disclose the relevant records, but it systematically attempted to remove them and place them out of reach of the Open Records Act. As with the Cabinet, the record suggests a "culture of secrecy" within Louisville Metro and the LMPD with them treating the Open Records Act as something to be "gotten around," and flagrantly disregarded when inconvenient. The allegations speak to a "systematic and categorical disregard for the rule of law" by Louisville Metro.

I am deeply troubled by the circuit court's willingness to simply dismiss the case rather than ensure that Louisville Metro and the LMPD are properly held accountable for their actions. I believe the circuit court abused its discretion in declining to maintain a supervisory role to ensure that Louisville Metro does not continue to evade disclosing pertinent records, and consolidation with the enforcement action the Courier-Journal had to bring after the circuit court unconditionally granted Louisville Metro's motion to dismiss is needed. *In camera* reviews may certainly be needed for the circuit court to determine whether

specific documents should be disclosed and what, if any, level of redaction is appropriate.

As to the next issue, whether had the circuit court granted the dismissal subject to terms and conditions, the circuit court could properly consider awarding fees and penalties pursuant to KRS 61.882(5), I believe that is precluded based on the statutory language. An award is only permitted where a person "*prevails* against any agency in any action in the courts regarding a violation" with such an award being discretionary "upon a finding that the records were willfully withheld[.]" KRS 61.882(5) (emphasis added). Therefore, I do not believe attorney fees and penalties can properly be awarded pursuant to KRS 61.882(5) because in the strictest sense of the word the Courier-Journal has not "prevailed" where a voluntary dismissal was granted. *See Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Resources*, 532 U.S. 598, 603, 605, 121 S.Ct. 1835, 1840, 1839, 149 L.Ed.2d 855 (2001) (explaining that "a 'prevailing party' is one who has been awarded some relief by the court" and does not include "[a] defendant's voluntary change in conduct . . . *without* a corresponding alteration in the legal relationship of the parties."); *Walters v. Moore*, 121 S.W.3d 210, 215-16 (Ky.App. 2003) (following the same reasoning).[8]

_____

[8] *See also Haroon v. Kerwin*, No. 2011-CA-001299-MR, 2013 WL 3105545, at *5 (Ky.App. Jun. 21, 2013) (unpublished) (explaining a contract providing for payment of attorney fees to a prevailing party could not require payment where "neither party prevailed . . . because [the case]

However, this does not mean that the Courier-Journal could not be awarded fees pursuant to CR 41.01(2) as part of the "terms and conditions" for granting a dismissal after appropriate findings were made. The reasoning provided in *Northern Kentucky Port Authority, Inc. v. Cornett*, 700 S.W.2d 392, 394 (Ky. 1985), a condemnation case, is instructive as to the proper scope of a trial court's discretion in granting fees as a condition of a voluntary dismissal:

> Kentucky generally does not allow attorney fees as a part of costs in the absence of a statute. One case, however, considered the "terms and conditions" language of CR 41 and held that the Kentucky Court of Appeals could not order an award of attorney fees upon a voluntary dismissal when the trial court authorized only costs. *Sublett v. Hall*, Ky., 589 S.W.2d 888 (1979). The court recognized the power and discretion given to trial courts under CR 41 and impliedly indicated that the trial court might make an award of fees as a part of costs when considered as a part of equitable "terms and conditions" in granting a voluntary dismissal. Attorney fees were awarded as a term or condition in a voluntary dismissal under the comparable federal rule, FRCP 41, in *Yoffe v. Keller Industries, Inc.*, 580 F.2d 126 (5th Cir. 1978).
>
> . . . We generally reject the idea of allowing fees and certain costs incurred in the defense of a condemnation action. . . . However, when bad faith or unreasonable delay can be shown, and there is definite prejudice and damage to a condemnee, we see no reason to deny any recovery.

---

was dismissed without prejudice" as "such a dismissal is not a finding on the merits of the claim, a finding necessary before one party can be said to have prevailed."). I cite this case not for authority, but because I agree with its reasoning.

-31-

Considering the right of eminent domain, Kentucky case law, the Eminent Domain Act, and the apparent recognition in Kentucky of the court's discretion to award expenses under CR 41, we conclude that costs and attorney fees may be awarded in a voluntary dismissal of an attempted condemnation upon a finding of bad faith or unreasonable delay by the condemnor. If a trial court should determine that the condemnor has acted in bad faith, it should also determine the extent to which the condemnee has been prejudiced by a dismissal and whether he could be made reasonably whole by the imposition of costs and fees as a term or condition to the granting of the dismissal.

C[R] 41 is quite clear that an award is within the power and discretion of the trial court. From the opinion of the Campbell Circuit Court in this action, it is apparent that the trial judge was unaware of his power to make such an award. Under such circumstances, the Campbell Circuit Court has not yet exercised its discretion in this matter. *Adkins v. Adkins*, Ky.App., 574 S.W.2d 898 (1978). The Cornetts have made several efforts to show bad faith on the part of the Port Authority. So far, however, they have not been given an opportunity to present any evidence which might allow them to prove their point.

(Omitting internal quotations marks indicating adoption of the Court of Appeals' opinion.)

The reasoning in *Cornett* is not limited to condemnation cases but is instead applicable to any litigation taken in bad faith. In *Louisville Label, Inc. v. Hildesheim*, 843 S.W.2d 321, 322-23 (Ky. 1992), the trial court was asked to consider whether to condition the grant of a voluntary dismissal of an employer's third-party complaint against two employees alleged to have been the cause of the

harm to the employee on the payment of attorney fees and litigation expenses in defending the third-party claim or to grant the dismissal with prejudice. While reversing the grant of attorney fees and costs by the Court of Appeals as unauthorized, the Supreme Court discussed the discretionary authority held by the trial court. The Supreme Court noted "[u]pon a finding that a claim has been pursued in bad faith, the trial court may condition dismissal upon payment of litigation expenses[.]" *Id.* at 324. It explained that:

> [i]f the trial court imposes options upon a voluntary dismissal without prejudice which the litigant is unwilling to accept, the movant has the option of withdrawing the motion, and thus leaving the litigation in status quo, rather than acquiescing in the conditions. . . . A voluntary dismissal is just that: the trial court may require agreement to certain conditions before granting it[.]

*Id.* at 325.

In applying *Cornett* and *Louisville Label*, I believe that if bad faith were established, the Courier-Journal could properly be awarded attorney fees and other penalties as a condition of granting Louisville Metro's motion for voluntary dismissal. The order dismissing the case reads in full, other than the caption and signature information:

> Upon Motion of the Plaintiff, Louisville/Jefferson County Metro Government by and through Louisville Metro Police Department, by counsel, and this [c]ourt being otherwise sufficiently advised,

IT IS HEARBY ORDERED that Plaintiff's motion
to dismiss the instant appeal is hereby **GRANTED**.

There is absolutely no analysis in said order. It is unclear whether the trial court even had any awareness of its discretion to impose conditions upon any dismissal pursuant to CR 41.01(2).

While the Court of Appeals cannot require the condition of penalties and fees, since that is within the discretion of the circuit court and would require appropriate findings to justify it, the circuit court must at least understand that it has such discretion and properly reject exercising it with findings for its decision to be valid.

Alternatively, if the enforcement action is consolidated with this action, an award of fees and penalties may ultimately be appropriate pursuant to KRS 61.882(5), should the Courier-Journal establish that Louisville Metro was willful in failing to comply with the Open Records Act. *See Bowling v. Lexington-Fayette Urban County Government*, 172 S.W.3d 333, 343-44 (Ky. 2005); *Lang v. Sapp*, 71 S.W.3d 133, 135 (Ky.App. 2002).

## CONCLUSION

At this juncture, due to the ongoing stay in the enforcement action, there is no court supervision regarding whether Louisville Metro is properly complying with 19-ORD-198. In fact, according to Louisville Metro's appellate

-34-

brief, it has already provided all the records it is required to produce and will not provide any further records to the Courier-Journal.

Based on the Courier-Journal's allegations, it appears that every legal maneuver has been used by Louisville Metro to delay and avoid complying with its responsibilities and that further responsive records are available to be produced, either from their location on LMPD servers or from their location within the FBI which, as found by the OAG, the LMPD can properly access and disseminate. This is a case where court oversight is desperately needed to ensure appropriate compliance and to mediate between the parties as to what needs to be produced and what does not.

Therefore, I would reverse the dismissal without any conditions, require ongoing supervision in the production of required records, consolidate this action with the enforcement action, and remand for further proceedings.

Accordingly, I dissent.

BRIEFS FOR APPELLANT:

Jon L. Fleischaker
Michael P. Abate
William R. Adams
Louisville, Kentucky

BRIEF FOR APPELLEE:

Chris J. Gadansky
James E. McKiernan
Louisville, Kentucky